JOB T. REYNOLDS ET AL. V. MARTIN L. SWEET.

*Logs and logging—Evidence—Assignment of contract—Pleading—*
*Damages—Quantum meruit.*

1. In an action to recover the balance claimed to be due upon a
contract for sawing hard and soft wood logs, the defendant,
in support of his claim that a large amount of the lumber
was improperly and defectively manufactured by reason of the
sawing of the logs indiscriminately with the same saw, intro-
duced a witness whose testimony was to the effect that, by
sawing indiscriminately all of the logs with the same setting
of the saw, good lumber could not be manufactured. And it
is held that it was proper to show in answer to this, not only
that it was possible to make good lumber by this way of saw-
ing, but also that good lumber was made.

2. A contractor under a sawing contract, after sawing and piling
the lumber within the time limited therefor, and after the
lumber had been received and shipped by the contractee,
assigned all his right, title, and interest in, to, and under the
contract to third parties, who brought suit to recover the bal-
ance due on the contract. The defendant, who sought to
recoup damages by reason of the alleged improper manufac-
ture of the lumber, contended that, under the assignment, the
plaintiffs could not recover upon a *quantum meruit*, for the
reason that they did not stand in the place of the contractor
in all respects, he having only assigned to them his right,
title, and interest in, to, and under the *contract;* that, if they
had any right of recovery, it was upon the contract; that, if
there was any substantial departure from the contract, no re-
covery could be had, and hence the plaintiffs must recover the
whole amount claimed or nothing. And it is held that, con-
ceding that a recovery could not be had upon a *quantum
meruit,* there is no difficulty in the plaintiffs' position and
their right to recover; that they had a valid assignment of the
contract, and all the right, title, and interest which the con-
tractor had therein; that the action was brought upon the
contract, upon which, under the charge of the court, the re-
covery was based; that the contract had been fully performed,
except, as claimed by the defendant, the lumber was not
properly sawed and piled; and that plaintiffs had all the rights

of recovery under the contract that the contractor would have had if no assignment had been made.

Error to Newaygo.   (Palmer, J.)   Argued February 13, 1895.   Decided February 26, 1895.

*Assumpsit.*   Defendant brings error.   Affirmed.   The facts are stated in the opinion.

*M. Brown* and *Bundy & Travis,* for appellant.

*A. F. Tibbitts* and *Wesley W. Hyde,* for plaintiffs.

LONG, J.   This action is brought to recover upon a contract originally made between Lorenzo V. Davis and Walter F. Pumfrey and Martin L. Sweet, and assigned by Davis & Pumfrey to the plaintiffs.   The contract provided that Davis & Pumfrey should cut and saw into lumber for the defendant all the merchantable red and white oak, black and white ash, hard and soft maple, birch, basswood, beech, pine, hemlock, and elm timber on certain descriptions of land mentioned.   Defendant was to pay $6.50 per thousand feet for sawing, hauling, and piling all lumber, except hemlock, for which $6.25 per thousand was to be paid, and $3.25 for peeling, hauling, and piling the hemlock bark.   The lumber was to be manufactured and piled in cross piles at West Troy station, each kind, length, and thickness of hardwood by itself, to be one inch thick and thicker, as defendant might direct.   A scaler was to be agreed upon, and the scale made at the tail of the edger, each party paying half of scaler's wages.   The contract then provides:

"Such of the lumber as shall be spoiled in sawing (except one per cent.) shall be turned over to the first parties at the price it would have been worth if not spoiled in manufacturing, and any claims that the party of the second part may have on account of such badly-sawed lumber shall be made and settled before such lumber shall be shipped from West Troy, or else be deemed waived."

The contract was afterwards amended so as to include hickory timber at the same price. The contract was made November 8, 1890, and was to be completed within two years from date.

Davis & Pumfrey commenced operations under the contract, and, plaintiffs claim, completed it in accordance with its terms. On May 19, 1891, Pumfrey assigned his interest in the contract to Davis, by a writing of that date. On October 22, 1892, Davis assigned the contract to the plaintiffs by the following instrument:

"For a valuable consideration to me in hand paid, I do hereby assign, transfer, and set over unto J. T. Reynolds & Co., of Fremont, Newaygo Co., Michigan, all my right, title, and interest in, to, and under the above and foregoing contract, as modified.

"Witness my hand, this 22d day of October, A. D. 1892.
                                    "LORENZO V. DAVIS."

At the time this assignment was made, plaintiffs claim there was due on the contract the sum of about $4,000.

The declaration sets up the contract and the assignments. In the notice under the plea of the general issue, claim is made that Davis & Pumfrey did not manufacture the timber into lumber in a skillful and workmanlike manner, so as to obtain from the logs the largest percentage of the best qualities and grades of lumber, but sawed them in such a careless, negligent, and reckless manner that a much larger proportion and percentage of the lumber therefrom had to be placed and sold in inferior grades than would have been the case had the proper skill been used in the sawing. It is also claimed by the notice that the parties had waived the provision of the contract by which Davis & Pumfrey should take and pay for the lumber spoiled in sawing in excess of 1 per cent., and any claims that defendant might have on account of bad sawing should be made and settled before such lumber should be shipped from West Troy, or else deemed waived. On

the trial the court charged the jury substantially that, if Davis & Pumfrey sawed the lumber as the contract provides, then the plaintiffs should recover; but if, as defendant claimed, the lumber or any considerable portion of it was badly sawed, that would not be a substantial compliance with the contract, and the defendant might recoup his damages. The jury returned a verdict in favor of plaintiffs, for $3,518. Defendant brings error.

While the record contains 60 assignments of error, only two questions are mentioned or discussed in the brief of defendant's counsel:

1. It appears that defendant claimed upon the trial that a large amount of the lumber was improperly and defectively manufactured, and that such defective manufacture was produced by sawing all kinds of logs indiscriminately with the same saw. To show this, defendant called Thomas H. Cook, who testified that it was not a proper way to manufacture lumber to saw oak, beech, maple, hemlock, and other kinds of timber with the same setting of the saw, as the saw would not stand up and go straight through the log. Mr. Cook did not see the lumber manufactured under the contract. To rebut this, the plaintiffs called a witness, who was asked:

"What do you say as to the possibility of making good lumber when hemlock, pine, maple, beech, basswood, elm, and other kinds of timber are sawed promiscuously?

"*A.* It is possible."

Other questions. of like import were asked and permitted to be answered, under objection. This raises the first question suggested by defendant's counsel.

The theory of the defendant was, in offering the testimony of witness Cook, that the lumber was not sawed in a good and workmanlike manner, and that much of it, by reason of the sawing, was not merchantable. The testimony of Mr. Cook, however, was to the effect that, by

sawing indiscriminately all kinds of logs, good lumber
could not be manufactured.    The reason that Mr. Cook's
testimony was admissible, if admissible at all, was that it
tended to show that the lumber was badly sawed, because
good lumber could not be made without sorting the logs.
It was proper to show in answer to this, not only that it
was possible to make good lumber by this way of sawing,
but also that good lumber was made.    We are of the
opinion that the testimony was competent.

2. It is contended that, under the assignment from
Davis, the plaintiffs could not recover upon a *quantum
meruit*, but that, if they had any right to recover at all,
it was upon the contract; that, if there was any substan-
tial departure from the contract, plaintiffs could not recover
at all.    The reason given for this claim is that the plaintiffs
did not stand in the place of Davis in all respects, because
there was no assignment from Davis of anything but his
"right, title, and interest in, to, and under the above and
foregoing contract;" that, therefore, plaintiffs must recover
the whole amount claimed or nothing; and that, if the
evidence shows any defect in the execution of the contract,
plaintiffs cannot recover.    If we concede that the plaintiffs
could not recover upon a *quantum meruit*, we see no diffi-
culty in the plaintiffs' position and their right to recover.
They had a valid assignment of the contract, and all the
right, title, and interest which Davis had therein.    The
action was brought upon the contract, and the recovery
was based upon the contract, under the charge of the
court.    The court fully instructed the jury that the recov-
ery, if any, must be upon the contract.    It appears that
the timber was all cut and hauled to the mill, sawed, and
piled within the time limited in the contract.    The de-
fendant received the lumber, and shipped it away.    The
contract had been fully performed, except, as defendant
claims, the lumber was not properly sawed and piled.

The plaintiffs had all the rights of recovery under the contract that Davis would have had. The defendant gave notice of recoupment of damages, and was permitted to show defects in sawing, piling, etc. No claim was made that recovery could be had upon the *quantum meruit,* and that question need not be discussed.

The judgment must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. MCGRATH, C. J., did not sit.